Case number 10-0413, Robert Boiko v. Monti & Associates. Step up and identify yourselves. Good morning, Your Honors. James M. Wolfe and James H. Wolfe on behalf of the Plaintiff Appellant, Robert Boiko. Good morning, Your Honors. Nicole Milos. I represent one of the Appellees, Norby. Good morning, Your Honors. Timothy Storm on behalf of the Platterhouse and the Monti & Associates. Are you both going to be arguing? Your Honor, we would ask leave to divide the time. Ms. Milos can take the vast majority of it. I would simply ask about five minutes, seven minutes. And you saw that we're pretty liberal, so with that you may proceed. May it please the Court. Again, my name is James Wolfe and I represent the Plaintiff Appellant, Robert Boiko. I'm here today to urge this Honorable Court to reverse the trial court's entry of summary judgment in favor of Monti & Associates and Norby. The trial court predicated its grant of summary judgment on its finding that an assignment of claims to the Plaintiff, Robert Boiko, was void as a matter of law. Specifically, the trial court found, as a matter of law, that the Fremont School Board did not approve, have notice of, or ratify the assignment. We respectfully submit, Your Honors, that the trial court erred in granting summary judgment. Do they make the claim that it did not ratify or do they claim there can be no ratification under the statute, which precludes, while there's the amended statute, which is what, 2021, that will allow, by implication I take it, the district to make decisions regarding goods and services under $1,000. And, frankly, that intrigues me on two grounds, one of which is really discussed, I think, adequately in the briefs, namely whether it has retroactive or ex post facto impact. And, secondly, whether the claim, the fraud claim, against the manufacturer comes within the ambit of goods and services. And that really got short shrifted in the briefs and I think it might be worth some attention. Understood. Well, Your Honor, an assignment is a contract, as we know, and I think there is an open question as to whether it would be for goods and services. We believe that that would, in fact, apply in this case because we have a payment that's beneath $1,000, as Your Honor correctly pointed out. We believe, given the fact that the Board of Education, remember, is under the law the agent of the school district, and that was the Board of Education of Bremen case, the first district 2008 case, specifically held that the school board is the agent of the school district. So, in that case, I believe the lawsuit would constitute a service under the statute, or at least arguably so. How is that? Can you spell that out? Sure, of course. I'm making you walk on cement shells here, but you want us to walk on them, so why shouldn't you first? Understood. Well, we have a situation here where the school board is, again, the agent of the school district. The whole purpose of a lawsuit would be to recover monies that would go to the school district because, after all, the school district was the entity that was damaged in this case. It was their pumps that were damaged. We can't lose track of that. Any monies recovered pursuant to a lawsuit would necessarily have to go into the account that is controlled and approved by the school board, and it's owned by the school district because, again, the school district was the entity that was damaged here. You mean the service being here, the service of the collector, of collection? I think that could be one way to look at it, yes. I do think so. So that the purchaser is basically going to do the collecting. It's going to be a little tough to sustain that since the underlying lawsuit, I think, probably has six or seven or eight or nine figures attached to it, while the payment here is $500. But, nevertheless, let's deal with it in concept, whether the purchaser is, in fact, like a factor who is performing a factoring service by virtue of funding the owner of the claim in advance and buying the rights to it. If an attorney bought those rights, that would be chamfered, wouldn't it? Can you explain that? Well, what's ever happened to the old common law tort of chamfering, which prevents lawyers from buying up causes of action? Oh, understood. Propagating lawsuits. Frankly, nobody raised it here, so I didn't do very much research except to think about it, whether that's what's actually happened here. But in any event, that would be the service. Oh, okay. And one point I want to raise here, Your Honor. Although $500 was paid for this claim, we have to remember something here. Mr. Boyko, who was a contractor at the district and had been working there for some time along with other entities that had these pumps and where ZoomSpout was utilized, has invested a substantial amount of time in this case and also a substantial amount of money. I understand what you're saying about, well, he paid $500 for this. But you have to remember, Your Honor, that a school board is not in a position to bring a lawsuit like this. And in fact, one of the big points we made in our brief is, to this day, they have not objected to this assignment of claims. Why couldn't the school board file a claim against manufacturers for products liability or the failure to perform the contract or for defective material or fraud or whatever? They have that right under the statute. The file claims for reimbursement, don't they? They have the right to file it. I shouldn't say reimbursement, but the claims do. The board has the right to file the claim in their own name, but the damage was done to the district. There's a symbiotic relationship. Yeah, but that's where the agency comes in. Right. You see, that's where they can file as agents on behalf of the district. Correct. And that brings me back to another question that I had. Why should the principal be able to bind the agent? An agent can bind the principal, but why should the principal here be able to bind the agent? Well, I'm not sure that's what happened here. Let me explain why. We have basically, Your Honor, the chief employee of the school board, who we allege was the agent. We gave some substantial proof of that. That was Dr. Taylor. Now, he was the CEO of the district. Correct. Was he a member of the board as well? He was not a member of the board. Because even if he was a member, there are those cases that will show that a member can't bind the board. We'll talk about that later. I know the case you're speaking of. That's the first National Bank of East St. Louis case. Which, as it turns out, while we're on that, I don't want to miss this important point here, which I think actually strongly supports our case, speaking of the agency of Dr. Taylor. Dr. Taylor, who again is the employee of the school board, which is the agent of the school district, signed this assignment at his place of work at the district. Now, I want to raise an important point. If you look at the employment agreement of Dr. Taylor, which is part of the appendix to our brief,  within there, it talks about notice to the board and notice to Dr. Taylor. That is the exact same address. Dr. Taylor's address is the same address as the school board. That's indicated in his employment agreement. The reason why the first National Bank of East St. Louis case is important is because under that particular case, the court held that the delivery of the assignment to the board in that case would have constituted notice if it went to the board's address. Well, guess what? That is precisely what happened in this case. And unquestionably so. And again, I think it's found at pages 2225 to 2226 of the record. It's part of our appendix as well. Please look at that. It's the exact same address. And I think there's strong support for the fact that this particular assignment was in fact delivered to the board. Because if you fast forward to March of 2009, we can't forget the fact that the board produced both a copy of the assignment and a copy of the check in response to subpoenas that were issued by the defendant Norby. It was produced by an employee of the school board, another employee, Mr. Cyril. Now, the important point there is... Who also submitted an affidavit, didn't he? For us and for the other side. That's right. He did. But the point being here is that those documents were clearly in the board's records. And this goes to the whole issue of notice. I think the very fair inference here is that those documents were within the board's custody going back to September of 2005, at the time the check and the assignment were in fact delivered to the board. And again, I'm pointing out a case cited by Norby of the First National Bank of East St. Louis. Delivery equals notice. And they quoted from the commercial code if you look at it in that particular opinion. That's exactly what I'm looking at right now. Which sort of brings to mind another question, because the commercial code covers goods and services. It does not cover something which is not a good or a service. You're making a very good point, and you're ahead of me on that. Because in that case, that's a good point, that was an assignment at issue in the context of a school board. And in that case, they specifically found or held that if this particular assignment had been not delivered to the address of the school board rather than to the board president's home address, then that would have constituted notice to the board. And the other interesting point in that case is that as the court stated, there was no evidence that the assignment actually was delivered to the president of the board in that case. That was a trial. That was not a summary judgment case either. The court called all the facts in that case peculiar facts. And I quote from that opinion. There was no evidence presented that the actual assignment was delivered to the president. And there was only a letter that apparently referenced the assignment. Anyway, what I see in this case, and I brought it with me, is only that if it's properly addressed to the addressee, it's presumed to be received by the addressee. There's nothing in here saying that if there's a different addressee, the fact that it has the same address is sufficient. And if the addressee in this case is not the board as a whole in its composition as a board, but is simply to someone who isn't even a member, or even if he was a member, just to an individual member, the indication would be that there's no imputation of knowledge. But, Your Honor, this is where I raise the point where I said we can fast forward to March of 2009 when those documents were produced by the board. Not by Dr. Taylor, but by the board. I believe there's an issue of fact here, because we don't know what Dr. Taylor did with the assignment when he signed it at the address where the board has its address, District 79, if you look at the employment agreement. But what we do know is that those documents were in the board's record. And what's interesting is Norby, in the response, now concedes, this is very interesting, that the board had notice of the check in March of 2009, because that's when they looked for it. 2009, not 2005, which raises the question of when there has to be such notice. Is a notice obtained, you know, at a later time, particularly significantly later time, of any interest? Wouldn't the only interest that it would have, that it would be, that there might be some inference that if they had it in the later period, they had it at an earlier period? But the fact that they simply had it at that later period would not cut the ice, would it? In other words, for there to be ratification, the ratification would have to be within some proximate time to the actual transaction, wouldn't it? Well, I'll tell you what, there is an issue of fact there. And that's why, you know, if it's an issue of fact, then summary judgment is not appropriate. Because I think that there is... It certainly would not be of relevance insofar as the issue of delivery. If we're talking about the board having received this notice at the time the transaction was entered into, 2009 would not be relevant, would it? Well, I do, Your Honor, have to... I have a very faint relevance. Well, not necessarily, because, Your Honor, to this date, remember, there's no issue that the board had notice of the assignment. The issue of fact is when. The defendants, and we have different... When would it have to have notice under the rule that would apply to both receipt and ratification? Say that again, Your Honor. Insofar as the... To determine whether there was ratification. What is the rule that would govern the time requirement for the notice? The only timing rule that I'm aware of in the case law is that there would have to be a repudiation, or, yeah, repudiation, within a reasonable time of notice of the assignment. And I can represent to the court today. I understand the record is formed. There has not been the slightest hint of an objection to Mr. Boyko from this court. Between 2005 and 2009, what did Mr. Boyko do with the claim that he thinks he bought? Filed a lawsuit. Okay, so the lawsuit was already filed. Yes. Now, what bearing would that have on the receipt by the board, or the knowledge acquired by the board in 2009 after the lawsuit was filed? Well, I think at that point, the board would have had the right, if they had an objection. If you're talking about what the board could have done with respect to the lawsuit, they certainly were aware of it. We know that because they were fully cooperative in giving both sides affidavits here. And honestly, they don't, they really don't have an interest in the case. So they could have, if they had an objection, they could have intervened in the lawsuit, and they didn't do that. That's the point. There hasn't been a hint, and also they haven't returned Mr. Boyko's money. So I think that's the best answer I can give there. If they had a problem, they could come into the case and object to it. So that your position would be that they could ratify at any time, regardless of intervening events, and regardless of the time of the initial acquisition? Is that basically the standard that you're espousing? Well, it's... I'm not challenging you. I simply want the information. Oh, I understand. Your input, anyway. Well, and this, again, is I think a big assumption, given I think the facts in existence in the case, that they didn't have the notice until March of 2009. Well, all we know is they had it in 2009. We don't know anything about whether they had it before. Everything that we do would have to be based only on the fact that we know they had it in 2009. But, you know, I do have... Except through the affidavits where they disclaim it. But, Your Honor, again, I think that may miss the point I'm trying to make here, that the fact that they had it in their records of 2009, the only evidence in the record as to the delivery of these items is that it occurred in September of 2005. So they had these documents within their records. And, again, if you look at Dr. Taylor's employment, he has the precise same address as the board. What does the records mean they had it in a file cabinet, right? Really, to have the information would require an addressee representative of the board. Well, if somebody plants something in a file cabinet, if it's a secretary or whoever, are you claiming that that is enough from which to presume knowledge on the part of the principal? Well, in this case, though, we have an agent on the board. And, again, there was another case who was Dr. Taylor who admittedly signed this assignment and took the check. And I do want to cite another case here that was cited by Norby as I'm reading these preparing for today, and it's the Classroom Teachers Association versus Board of Ed case. That case clearly said that the superintendent is the agent of the board. And they relied on section 10-21.4 of the school code, which specifically talks about superintendent slash duties. And the superintendent, well, one of the things it says is the superintendent shall perform such other duties as the board may delegate to him. Is this delegable or non-delegable? I think that's an open question because the one case that's cited by Norby is a 1916 case, the Stroh case. It's an out-of-district case. Is this question really important? I know you folks spent time on that, but the question of whether something is delegable or non-delegable, I suppose, may not pertain to delegating one of its own staff to do something. It has to do with interagency delegation or delegating it to a private sector, but not to the designation of one of its own employees and perhaps, in this case, members of the district who have a close relationship. But that's another story. But in any event, even if Dr. Taylor were the, as superintendent, the agent of the board, is he an agent for everything? Only for stuff that's delegated to him or maybe within a narrow corridor of responsibilities. Is the sale or the assignment of choices of action within that corridor? I don't think that's clear at all from the information provided by NORBE. I really don't. Because if you look at the breadth of Dr. Taylor's employment agreement, which he happily provided to us along with his affidavit, he runs that district. He's given a lot of authority by that board. He's the CEO. In our mind, he's the key agent. So, you know, again, I think these are issues of fact here. I really do. And it's the First National Bank of East St. Louis case, Your Honor, had discussed earlier. That was a bench trial case. And the court had carefully weighed the facts there. You know, the issue of, to create an issue of fact here, you don't have conflicting facts. You have, at best, conflicting inferences. And the question is whether the existence of an agency relationship of a general nature between Dr. Taylor and the board is sufficient to give rise to conflicting inferences at the very least as to whether he had the authority to sell choices of action belonging to the district. I think your opponents would argue that that is not a sufficient basis, simply the fact that he's an agent to make inferences that he was an agent for this function. And, you know, Your Honor, one of the main reasons we raised the whole Dr. Taylor agency, you have to remember, is on the whole issue of notice to the board and ratification. And again, I have to cite that same case, again, he signed this at his place of work, it's in his affidavit, during his normal work hours. He was employed by the board. The board was the agent of the district, and Dr. Taylor also worked under the board as the agent of the district. And in this case, they have the same address. I think that alone is an issue of fact here. Respectfully, I do think so. I mean, this was in 2009, and they had this in their records. The inference is that it was Dr. Taylor properly placing the records in the board. And under that case, it's deliberate. That's my read of that case, along with the other issues here. And we also have the issue of Mr. Boyko's $500 check, which plainly on its base stated assignment of claims Zoom spout, that was unquestionably viewed and controlled by the board. In fact, the trial court, Judge Goldberg, had previously found that that was evidence of knowledge or notice to the board. Yes, he did. Well, he did change, he changed his mind. That's accurate. But I don't want us  So, due to the questioning, I think I've covered many of the points at this point. If I could have some time for rebuttal, I'd appreciate it. And again, I just ask that the court reverse the trial court's grant of summary judgment. Thank you. Is it still morning? Good morning, Your Honors. Again, my name is Nicole Milos, and I represent one of the Appellees, Norby. Your Honors, this is a case where we are fortunate enough to have a clear statute in the Illinois School Code, and it is application of the Illinois School Code in this case that is imperative for this Honorable Court to conclude that the trial court correctly granted summary judgment for the Appellees, Norby, and Monty. In this case, the Illinois School Code is not necessary to conclude the jury's decision. But can't the Superintendent... the only reason I raise this is we're fighting with the school board with an idiot superintendent. Can I hear it appears to me that he almost has crossed the line. The Superintendent, I would agree with you in that argument, Your Honor. In this instance, the Superintendent's duties are clear as to what he can do and in fact what he cannot do. And the school code is also clear that the board has the responsibility to sue and be sued. And as Your Honor pointed out a moment ago, the board does have the availability to bring a suit against Norvie, Monte, anyone. Now, with regards to this particular case, and your question, Your Honor, with regards to that statutory section 20.21, although it's jumping ahead a little bit and maybe going a bit off point, I'd like to address that if I might. The statutory section that Your Honor discussed is a section that relies upon goods and services. And that CETL case that also discussed that 20.21 and UCC provision was a case that was involving construction contracts, goods and services. In this particular instance, we're dealing with an assignment of law. We're not dealing with construction contracts. We're not dealing with goods and services. Supposing this was a factoring arrangement. Supposing you were basically card you and had floor plans and had factors come in to prepay you and take over the duties of gathering in the monies from the purchasers so that the vendor has his money in advance for inventory or whatever. Isn't factoring a service? Or would it be a service under this provision? Under the case law for 20.21, the goods and services that they discuss and that's the only basis. Supposing they paid a million dollars and the board said, well we don't have the time, we don't have the resources here to start any major lawsuits. You go ahead and you do the suing and we'll take your million dollars. Would that come closer to being a service? I do not believe so based upon the case law interpretation of 20.21, your honor. In all of the 20.21 cases, it involves actions of construction, remodeling, they are services in the truest sense of the word. What you are offering in your hypothetical, your honor, is the duty to sue and be sued which is clearly codified in the Illinois school code. And the reason that it's codified and the legislative intent behind the school code is something the design of the court must consider. This is a school code that was established to protect our educational community and fiscal responsibility We do not want people who have a lifetime job because they were fortunate enough to have their resume fall across the right desk at the right time to be making decisions about taxpayer money and filing suit or not filing suit. We want elected officials that sit on our school boards. Maybe it's a kind of a general intangible that can fall under the definition of a good being goods. Again, your honor, the only... It's a general intangible under the commercial code. Maybe it's a goods even though it wouldn't fit the commercial code. I understand your honor's intent or argument... Because what else is there? I mean, did the statute intend to delete this kind of transaction? How many other similar types of transactions are there? Or is it simply a matter where the drafters were not terribly aware of this kind of sale taking place in this context? But once it does take place, the design would be to fit it in one way or another. To the contrary, your honor, I don't think that the drafters forgot about it. I think the drafters specifically included it in the section of the school code which imposes upon the board the duty to sue and be sued. Does that exclude, or does it, the sale of the chosen action? Does it? I believe that by stating that the board  discretionary non-delegable duty to sue and be sued, the legislature has explicitly carved out... Non-delegable. Non-delegable. You know, I believe that in stating that, and again, your honors, you have to consider what the legislature is protecting. There's a reason why both the legislature, the case law, and the school code itself is so clear. In this particular instance, it says that board members cannot find the board. Individuals cannot find the board. If you want action by the board, if you want notice to the board, if you want approval of the board, if you want the board's action, you must present information at a board meeting at which a forum is present. Everything is clear. And in this case, there is no question of that. There was no discussion of assignment. There was no presentation by Mr. Boyko, or regarding Mr. Boyko's request. I believe if, assuming, for the purposes of what I'm about to say, that ratification would be available, which, as Your Honor noted in our brief, we've taken this decision. Are you saying that it's never available to any kind of transaction that the board can't ratify? I don't think you want to go that far. If you're not going to go that far, then you have to tell us where ratification would be available. Would it still be required to adhere to the provisions of the statute that require meetings and presentation and discussion, et cetera? I believe that pursuant to the statute and case law, and specifically I'm relying on the Bessler v. Board of Education case, because that goes against the entire design of the ratification construct. But for discretionary powers, which, again, the legislature has placed an intent that they want elected board officials to make these determinations for those discretionary issues, there is no subsequent ratification available. So, in other words, could the board ratify something that someone has proposed? Yes, as long as action was not taken first. So, could someone propose filing a lawsuit against a particular entity, the board that meet, ratify that proposed lawsuit, and then action be taken to file the suit? Yes, but you cannot take action, assign a right, which is a discretionary right, which only the board can do, then seek board approval, seek board ratification. You cannot subsequently ratify the actions. And, again, the reason for that is to protect our communities and protect our tax dollars. We want to make sure, and the legislature has fulfilled this through this statute, that only our elected board members at a meeting are the only elected board to deal with. So, for this particular reason, we don't want someone to be able to cozy up next to a board member at a Starbucks, or, as the Seto case represented, with several board members sitting on another board, be able to vote on something, and someone be able to say, I hope that that made sense. But it is our position that, in this instance, the only way... Even if the suit is over something relatively ministerial in and of itself, that is not really connected with the functions that the board and the district are designed to carry out. If a truck drives by and damages the sidewalk or the... crashes in to the door of the premises owned by the school board, that they couldn't privatize that action by selling it off to someone to sue this truck driver. The board is the entity that would have to make that decision at the conclusion. Whether it's something that is totally outside of the scope of the functions of the board, clear down the line, no matter how trivial, no matter how distant the action is from the intended functions that the school district and the school board are designed to carry out. Correct. The intended legislative intent of the school code is that only the board can sue and be sued. The issue for this court is very basic. The board did not assign legal rights to Mr. Boyko. Therefore, the trial court correctly held that the assignment which Mr. Boyko relies upon is void. We do not want our schools and our tax money to be spent because an individual without authority makes a mistake or makes an action which is a misjudgment. That is not something that our legislature intended and is the reason that they created the discretionary powers of the school code. If you have any further questions for me, Your Honor,   for the motion to be affirmed. As Your Honor has noted, the court took much time in reviewing these matters and listening to argument at the trial level. At the motion to dismiss standard, the court decided that further evidence was necessary and following the motion to dismiss     argument be split on behalf of the plaintiff. Thank you, judges. The logic behind splitting the argument was that I would deal with the post-hoc issue. The danger of being number two is that sometimes things go such that you   how to deal with the issue. I want to focus on one important part of the ratification point that actually came up during the hearing. One of the best arguments I ever heard was one lawyer in one of those cases that involved multiple parties stood up and said I have nothing further to add. I thought that that was brilliant. I thought Ms. Milo stole my thunder by addressing this issue.   that  Milo stole my thunder by addressing  issue. I thought that Ms. Milo stole my thunder by addressing this issue. I thought that Ms. Milo stole my thunder by addressing issue. challenge whether any lawsuit has been filed based on this assignment and should have intervened in that lawsuit. Well, the question is whether ratification is a passive act on the part of the ratifier in which event the ratifier or or putative ratifier would have to get up and do something to show I'm not ratifying or whether the initiative has to be taken by the other side. I mean, I was under the I never researched the point but viscerally I would have thought that if somebody doesn't want to ratify he should or she should take the initiative and say here's your money I don't really consent to your claim. That it's the passive action that can become the act of ratification. There are two answers to that, Your Honor. The first is from the school code. If the school code does not permit a school board to be bound in the first instance by the act of a mere agent in the case of a non-delegable duty or even by the act of a single school board member or less than the full board in general there is no reason to believe then that the school board is going to allow the subsequent approval of an action by the school board which is a unique entity under the law to be accomplished without all of those safeguards. We are mending the whole by shifting gears. It is intended to be a joke because mending the whole doesn't appear in Greece very often. I've only seen it once before. It means shifting directions. If I haven't properly answered your question, I'm sorry, but the other point that I would make in answering your question is merely allowing this sort of passive idea of ratification not only goes against the school code, but it raises the question of what is a school board or anybody in this position obligated to do? Do they have to not only determine what their agent has done on their behalf but then scan the horizon to determine whether there are any lawsuits out there and then intervene in those lawsuits? I think, as Ms. Milos clearly pointed out, the purpose of the school code is to protect the board. Except that the ratification would only take place if there was evidence of knowledge either actual or constructive in which event requiring an affirmative action would not be far-fetched. And there is absolutely no evidence that there was even so much as notice to the full board in this case. We heard, I think, the best that the appellants came up with on that point is that when there was a subpoena issued, as the appellant says, the board produced the assignment. But that's not a factually accurate statement. The subpoena here was to the board and to the district. There is no indication that the board as an organization had notice of the assignment, let alone that the board ever took it up as an agenda issue, either before or after the fact. But the question is, does it matter? Because if the full school board does not have notice at a formal meeting with a quorum, in fact, they have no notice. Is that not accurate? I think that's an accurate statement. Unless the knowledge is constructive. All right, so I see we're going to fight. Well, in any event, this still leaves the plaintiff with the position that the school board adopted this assignment by doing absolutely nothing. And unfortunately, the problem that the plaintiff has with that is that the plaintiff drafted this assignment that says the school district is assigning certain rights to the plaintiff to sue. But undeniably, the school district never had those rights. Only the school board has those rights. So for the school board to stand silent and say nothing about this assignment does not suggest that the school board is amending the assignment or adopting the assignment. The school board is simply standing quiet in the face of an assignment that is on its face, void, and of no effect because it purports to transfer rights that don't belong to the school district even though it says it's transferring those rights. This is the assignment that the plaintiff drafted. No one drafted it for him, and he's trying to cast blame and consequences of that on everybody else. But the consequences and the blame are on the plaintiff alone, and summary judgment was properly interpreted. Thank you. Thank you. Just a couple points. First of all, there would be no reason for Mr. Boyko to request his check back because it's our position that the plaintiff  his check back. Number two, there is evidence in the record that the full board had notice of this assignment, and we pointed this out. Any formal meeting? Well, Ms. Bickley said the board was given notice. Any formal meeting with a quorum? She didn't say that. She did say that the board received notice. In 2009? In 2009, that's correct, yeah. Ms. Bickley said that the board had notice in, I think it was August of 2009. She doesn't say it was with a quorum and a formal meeting, but for purposes of summary judgment, I don't think that's an unreasonable inference to draw here. So it still leaves the possibility of a question of fact is what you're really saying. That's really it. We did point it out at some level. What does it hang on, the retention of the check? Is the evidence of ratification simply the fact that the check was left there? Supposing this were a gratuitous transfer, would you still have a question of ratification? Not as much because the law says that by the acceptance, one of the ways that ratification can be accomplished is either exists where principle. Accepting benefits, right? That's correct. No matter how de minimis those benefits may be. It doesn't talk about a de minimis. So if it were for $5, it would still be $5,000. Not necessarily. I think I brought this up earlier. The board is not in a position to take the time to investigate the issues in this lawsuit. Mr. Boyko, again, is in the industry and I can represent it. I think it's in the record if you look back. He spent hundreds, literally hundreds, maybe thousands of hours investigating this whole issue. And as to the damage done to this pump and why it was done. Mr. Boyko has also spent quite a bit of his own money. The board is not in a position to do that. But Mr. Boyko, being in the industry, is trying to prevent a fraud. And he, again, the amount of time he has spent on this, in ferreting this out, is amazing. Along with his own money that he spent. So I don't think it's... Counselor, I'm sort of curious, although this is not in the record and you have no reason to think you have to answer it and we're not going to consider it in any way. But why wouldn't this have been a class action? Well, the class... You know, I'm not an expert... You don't have to struggle  answer. Yeah, I think it's a lot harder to bring it in general. I'm just curious. By no means does it have, as far as I'm concerned, any bearing on the... I don't want to speak in  That's something I'm not... But in any event, I do take issue with Monty's position, though, that there does not have to be an affirmative act to repudiate because the law clearly does say that ratification exists where a principle fails to repudiate an agent's action once it has notice of it. And that's an affirmative act. And, again, we already talked about the acceptance of the benefits of the agent's actions. I talked about Bickley, how she admitted that the board had notice. I understand Justice Fitzgerald Smith's point that it doesn't state in the affidavit that it was a full board meeting with the quorum, but I understand that she said the board had notice. The board had notice. That's an issue of fact. And this is a summary judgment. The other point I wanted to raise was Norby brought up the Bessler case and talked about elected officials and ratification should not apply because these are elected officials. And we cited a couple of cases, City of Lake Forest and the City of Burbank case. So the same rationale would apply. If it applies to municipalities where there are elected officials, it should likewise apply to the elected school boards. So in conclusion, your honors, we believe that the trial court erred in granting summary judgment in favor of Martian Associates and Norby Inc. And we respectfully ask that this honorable court reverse the trial court's grant of summary judgment. Thank you. As you heard before, it's near the end of the quarter, so you should hear by the end of the month the results. But both were enjoyable, very interesting, very well